Good morning. May it please the Court, Fred Rispoli, on behalf of plaintiff appellant Hodl Law. I'll reserve three minutes for rebuttal. In his request for declaratory relief, Hodl Law seeks the answer to just one question. Does its use of the Ethereum network and the Ethereum DCU violate securities laws? Is it unlawful conduct? The SEC bitterly opposes providing just an answer to this question. And it's unclear why, because reversing the district court doesn't equate to a loss of jurisdiction by the SEC. It just puts its claim jurisdiction to the test under the framework of the federal judiciary. And the fundamental error that was committed by the district court was its standing analysis framed almost exclusively on the fact that Hodl Law is not being investigated or can't tell if it's being investigated by the SEC, but that's not a requirement or the correct standard under this circuit. In the context of a standing inquiry about potential enforcement of a law or a violation of a law, it's, this is from LSO, a realistic danger of sustaining a direct injury, not just from enforcement of the statute, but from the statute's operation. And so what that means is if tomorrow the SEC by fiat announces that it views the Ethereum network and the Ether DCU as securities, Hodl Law has de facto engaged in federal securities violations, and that can trigger a host of violations, reporting to the self-bond. Why don't you just wait until they do that, and then you can file your lawsuit and there's... Well, that's the problem, Your Honor, is that the problem is that, yes, on the one hand, we can wait 10 years for the SEC to make a decision because it hasn't yet since the initiation of the lawsuit, but it's not required for a plaintiff to sit back and wait in order for something, in order for the government to take that decision. Well, under the Declaratory Judgment Act, you first have to satisfy that there's a true case of controversy. Yes, Your Honor, exactly. And so... They've not taken any action against you, correct? There's no action taken against the law firm, Your Honor, but again, that's not the issue that needs to be... Have they sent you a letter that you possibly might be under... Well, Your Honor, they have sent no letter, but they also won't reveal if they are investigating the firm or not. Do you feel like... Do you have any basis for saying that there's a threat of investigation, or are you arguing that you think they may actually be investigating you? Yes, Your Honor, there's a threat of investigation, but more as a... One, we don't know the specifics because the SEC won't divulge that under its deliberations process privilege, but the threat is the more general usage of the crypto participants in general, because the issue is, and this is happening so fast, if you look at what this Court has said, and where the constitutional rightness issue overlaps with the standing issue, is it's not... And again, this is in the LSO case, citing Brennan. It's not consummation of the threat and injury that's required. It's not a discernible test. It's one of degree, and you look at a couple of factors. One of those is past enforcement actions. The SEC has brought cases against hundreds of individuals, companies, individuals, and not just exchange defendants, but... Against Ethereum users? As of June 28th, 2024, and I'd be happy to provide that case to Your Honor, the SEC just issued an enforcement action of the creator of the Ethereum network in the Eastern District of New York. Now, the problem in these crypto cases is that the creator of the Ethereum network uses it in some, but different ways than HODL law would use it. There's all sorts of ways you can use these tokens on the network, and so that's why it's not sufficient to just let another case with a different, in this case, defendant... Did they take a position as to whether the Ether or Ethereum is a security in that action in New York? In that action in New York, it is ambiguous, because the court, or the SEC is alleging indirectly, yes, because the way that the claims are structured currently is that certain other DCUs that are alleged to be securities violations have to use the Ethereum network in order to function. And every time you use another DCU on the Ethereum network, you use the underlying token, Ether, in order to exchange those tokens or move those tokens around. And the SEC has been extremely coy in being able to bring these cases to fruition from the context of its allegations. So it's very unclear exactly where that is going to go, but again... You haven't had a letter. No, the SEC hasn't said that they're going to investigate, and there hasn't actually been an Ethereum user being charged by the SEC. It's kind of hard to see how you're out of the bailiwick of a general threat of prosecution into something more realistic. Well, I would say that the court needs to take this approach in the overall framework that we have a fundamentally new technology that is disputed by many government agencies as to what this is. For example, we've got the CFTC claiming that the Ethereum network and the token are commodities. Doesn't that counsel against granting declaratory relief if there's an open debate among different federal agencies about how to categorize and regulate this new existence? I mean, that's the reason why it doesn't make sense in some ways to force the SEC to speak before it's finished its consultation process with other agencies, no? To some extent, Your Honor, but overwhelmingly the answer to that is no, and that's for a couple different reasons. One is because we are not talking about an SEC that just started looking at this issue. The SEC has been looking at the Ethereum network for 10 years, and the case law is clear that when an agency is delaying in bad faith, then the courts can step in and take action when it sees that an agency is specifically trying to say that it's trying to engage in tactics to make its decisions unreviewable. Six years has been held to be unreasonable in past cases. But that's when a prosecution has been initiated, right? What you're describing about delays is after an agency has initiated a prosecution, which is not where we are. I understand the frustration that you are expressing, and obviously so since there have been multiple petitions. It's just whether it enters into the realm of a live case or controversy is what we're trying to wrestle with. Exactly, Your Honor, and I would just fall back on the fact that the SEC's failure to act, and the issue of whether it's investigating or going to investigate HODL law is simply not a requirement under this circuit-standing analysis. I guess I would tie that into the overlapping APA final agency action issues, which is that in any event, HODL law can now sue the SEC because in the intervening time between what happened at the district court level and Pallant's opening brief, the SEC did take final agency action. This is in our reply, but the SEC affirmed to the Third Circuit that rulemaking on digital assets was, quote, unwarranted because the present state of the law, the 1933 Securities Act, encapsulates this emergent technology. That petition by a U.S. exchange specifically asked the SEC to engage in a new regulatory framework and to address the, quote, classification of cryptoassets as securities. In other words, how can the market know what they're doing is legal or illegal? Obviously, even in that broad framework, Ethereum would fall under the general classification of cryptoassets. Is there a case that says that the decision to not engage in rulemaking is itself a final decision under the APA? Only to the extent, Your Honor, that there are those cases that say the agency's bad faith or impropriety or unwillingness to make a decision is demonstrative that it's not necessarily a final decision, but demonstrative that it will never make a final decision. I guess I would turn back to the rulemaking petition itself, which was, again, we're talking about the consummation of agency action. The petition itself was done by a court order, a review of staff at two levels, high levels of the SEC, recommendation by the staff, the commission deliberating, and the commission making the determination after, quote, careful consideration. We have this final agency action, which is that we're never going to take a final agency action because we don't have to. So you don't believe that Hinman's speech was a final agency action? I was just about to move to that, Your Honor. Even if you don't want to address that petition issue in the Third Circuit, the district court erred in saying that the Hinman speech was not a final agency action because that specifically squarely addressed Ethereum, the network, and that the Ether securities are not transactions. Why can't you rely on that statement? And then if the SEC were to try to prosecute you, just say, well, we relied on this statement by the SEC, and we took you at your word. Because the SEC has already made that argument to another district court in New York saying this speech has nothing to do with the SEC, and this was just somebody that, yes, was the director of the Division of Corporate Finance, but really given his personal opinion. And what happened there is that there was then a bitter fight over internal emails and discussions with the SEC about that speech, and we've since found out that the SEC circulated that speech, analyzed it, and modified it dozens of times through 18 offices and divisions, whereby the then chair of the SEC publicly affirmed in congressional testimony, this speech, this is the way our staff will evaluate whether a digital asset is a security. Even the general counsel of the SEC in some of those emails said the legal effect of this speech is going to make it hard for the agency to take a different position on Ether in the future. So that's the problem that we're in, is that the SEC says one thing, and then it'll say another thing to court, and it'll say a different thing and a different action, and then another different claim that it'll make, and there is zero certainty that HODL law can rely on to engage. And I guess I would go to other cases where exchanges and individuals, they've all argued lack of fair notice, lack of fair notice in all of their cases. We didn't have fair notice that what we were doing was illegal, and courts have repeatedly struck down that defense of fair notice, saying, based on everything the SEC's done in operating, you did have fair notice, and so the case will go forward. And so it's just not a, that will not be a justification for HODL law in any future issue where you have the question of, well, we asked, they didn't say anything, there's just simply no fair notice there. And, you know, again... Do you ask for an opinion letter from the SEC? Not a specific opinion letter, Your Honor, but I would state that the record is clear that the SEC has zero, zero cases of an individual or entity ever requesting a determination that a particular DCU is not a security. The SEC has never done that once, and so it's not required under the standing and rightness rules to engage in an act of futility. There's never been a requirement to engage in such an act of futility. Well, I'm just, I mean, I represented corporations a long time ago when I was a litigator, and we, on behalf of our clients, we'd often write opinion letters and get answers back on specific facts, and you just didn't have a, I know it's not a requirement, but your argument is that you're operating in a world of uncertainty, so see if they won't give you an opinion letter. Well, Your Honor, the SEC has not given one opinion letter ever in its history of evaluating digital assets where it says, here's the token, we don't think this is a security. And I, obviously some of these are done in private and in confidence, so I don't know if publicly or if privately one of these has ever happened, but I can't think of any instance where the SEC has ever done this, and especially in light of its, what I would say, final agency actions, either from the speech or from the petition in December itself, we just don't have the requirement for that to happen. And even, you know, I'll just end on the bare point, if there's economic injury, even under this circuit, that if there's economic injury to a plaintiff, even future economic injury, that can be sufficient to converse stand-in at times as well. That's not even requiring the plaintiff to engage in that activity. Obviously, you'd prefer if GCUs were not considered securities, right? Correct, Your Honor, it's our position they're commodities. I see I'm running out of time. May it please the Court, David Lisitsa for the United States Securities and Exchange Commission. The SEC is permitted to act through rule-making or case-by-case enforcement actions. Those are two avenues to choose, and under the Supreme Court's decision in SEC v. Chenry, either avenue is permissible. But it's indisputable that neither has happened here. That's why HODL law lacks standing and HODL's claim is not justiciable. A case or controversy could develop for HODL law, but it hasn't. They could request a rule-making. The SEC could act on that petition. There will be a rule-making or a denial of that petition, as they point to a different party who did. HODL law could then challenge that determination in court, as that other party has. Or if the SEC brings an enforcement action against HODL law in district court, HODL law can, in that court, make its arguments about commodities, notice, et cetera. Under either path, though, a commission rule or enforcement action, HODL law would get review. But as the district court found here, neither has happened. So there's no case or controversy between the SEC and HODL law. What HODL law can't do is try to leapfrog over this requirement to get an opinion that at this point would be purely advisory. So I'd be happy to take your questions, but there were some topics that came up that I could shed light on, if that would be helpful. I was going to talk about the case that was recently filed. Why don't we talk about that case? Sure, yeah. First, can you give us a site to it? Yes, absolutely. So it's SEC v. Consensus Software. It's number 24CV4578 in the Eastern District of New York. The commission brought an enforcement action against Consensus, alleging that it failed to register the offer and sale of certain cryptoassets, failed to register as a broker. However, cryptoasset security is not ETH itself. It's a cryptoasset staking program. Staking in this context is about pooling ETH contributed by investors and providing them a pro-rata interest in that pool as rewards, often by issuing the reward itself or a new cryptoasset. Now, this would be the same situation as if someone pooled silver bars or gold bars or whiskey receipts. Anytime there's a pooling of investment under Howey, an investment of money, pooling of investments so that there's a commonality between investors, and they expect profits from that pooling, how the pool is managed, doesn't in that situation matter what the underlying is. In fact, on June 18, 2024, Consensus Software announced and published a letter announcing that the SEC's Enforcement Division notified them that it's closing its investigation into what's called Ethereum 2.0, which is sort of a common term now being used for the current Ethereum standalone by itself. So that case is a very different case than Ethereum itself. Do you have a site for that case? That was the Consensus case. There was a letter released by Consensus. It's sort of through the SEC did not release it itself. It was made public through a blog post. We could provide a letter, and we could attach that letter to the court. So are you saying, depending how the Ethereum is used, it could amount to a security that's regulated, or it may not amount to the security that's regulated, so you have to look at each individual type of transaction? I mean, that's absolutely right. There are many different ways of having an offering, even for the same kind of object or asset. You can't say it's always or never a security in some circumstances, because it depends on how it's configured, how it's packaged, how it's offered, what statements are made. And that is true, again, of real estate, some real estate investments or some investments in commodities like silver bars, depending on if there was pooling or not. Sometimes it is a securities offering, and sometimes it's not. It's highly dependent, as Your Honor points out, on the facts and circumstances of each case. It's particularly true for crypto assets. Would the SEC be able to issue an opinion on the particular use by HIO law of the Ether on the Ethereum, whatever it is, site, or web, or Coinbase? So I would just, there is a process that Your Honor was familiar with talking about in private practice. There's something called a no-action process. No-action relief has been granted to three crypto asset issuers. It's IMVU, Pocketful of Quarters, and Kern Key Jet. Now, there are limits to that. It's not action by the Commission. It is a letter from enforcement staff often saying, under the circumstances presented by counsel and under particular facts, that we will not recommend to the Commission, under the understanding of those facts at this time, that we will not recommend enforcement action. But it's not immunity from suit. It's the comfort that it gives. And there are cases about that. So that is a process available. It happened three times in the crypto asset space. There are also five offerings that have been registered or qualified under the Securities Act, where issuers came forward and said, we want to register these securities. And then they were registered or qualified. So there are means available, even in the crypto asset space. It could be that, am I right in looking at it this way, that Ether could, or the DCUs, could be a commodity, but if used in a particular way, could come under regulation by the SEC or enforcement. Well, let me try to just, I mean, I think that that is an essentially correct outline, but let me, if I could explain the CFTC-SEC commodity issue, because it's, you almost need a flowchart, and the CFTC produced one that's useful. But securities are commodities. Commodity is a broad definition. It includes everything except onions and movie ticket receipts, for historical reasons. But securities are carved out. I'd like to know that. Yes, it's a fascinating definition. The onion is actually more interesting than movie ticket receipts, which turns out to be, I think, just lobbying. But securities are carved out of the CFTC's jurisdiction, except in very rare and limited circumstances. So the CFTC can identify a commodity, but that doesn't mean it's identifying an asset that's a commodity and not a security. And the crypto assets can be subject to multiple regulatory frameworks, but as Your Honor pointed out, if there were a suit filed and a conflict between the agencies about how to view it, that gets litigated. There was a recent case, CFTC versus Archegos, in the Southern District of New York, where the CFTC asserted that some complex instrument was a commodity, and the SEC came in and said, actually, we could view it as a security, and the court dismissed the CFTC's complaint. Now, could it work the other way? CFTC has asserted its authority. There's a case called where the commission thought something was not a commodity, and under CFTC's jurisdiction, again, they're about futures and derivatives on commodities more than commodities itself. But sort of the commodity versus security question does get litigated and can be sorted out, but even in Howey, you can offer a commodity, like an orange, as part of an investment contract. So it really is very factual, and we don't know, if you read the complaint, exactly what transactions HODL law is engaged in. We think it's sort of intentionally vague, but we did not try to say anything one way or the other about that, because there are activities that could look more like brokering activities, even for a law firm. Or they could be just regular resellers, and regular resellers in a retail market, as we point out in footnote four of our brief, they have a statutory exemption. They're not an issuer, underwriter, or dealer. This is sort of very well known. So if they just said, we're just transacting, any lawyer would tell them, oh, you're in retail? You're not affiliated with the issuer? You're not part of the initial distribution of the tokens? That's the kind of comfort that is given, and it's been the clear, consistent position of the SEC in enforcement cases, that they're not going after resellers. The people the SEC are going after are issuers, affiliates, people acting as brokers, dealers, and exchanges. They pointed out to one case and said, no, those are individuals? No, they were affiliates of the issuer. In Ripple, it's the CEO. Has the SEC ever issued any kind of public statements to that effect? So I asked directly about this reseller issue, and I think that outside of the releases about rule 144, which is a rule about who is an underwriter, I think this is just so well known, and I think there have been certain statements in litigation, but the commission itself, I think you just have rule 144, which cautions, if you read it, it says, even if you're an individual, you could have a problem if you're affiliated with the issuer. So they're very hard questions, but I think you would just look to that rule, and the statute itself gives the guidance. Is there ever something about the DCU that makes it more likely to seem like a security than a commodity? In other words, ether one place, a different DCU in another place? As opposed to the form of issuance or other things. I don't know that there's anything that makes it, there's a unique asset structure that makes it more or less like a security. I think the problem is you have 25,000 at least, as one court recognized, of these tokens. It seemed to be, some part of it, we're trying to avoid blowing a hole in the registration requirements. They're getting money in general from a lot of these tokens from people investing it, people are losing money, they're relying on other people, and it seems like it's a challenge for the disclosure regime. But I don't think it's any different than other asset classes. So for instance, in Schooler, this court's opinion in Schooler, you've got general partnership agreements, generally not a security. But if you have powerless partners, and they look more like limited partners based on the facts and circumstances, highly calibrated, fine distinctions, suddenly a general partnership agreement actually looks more like a limited partnership agreement where people need a disclosure under the securities laws. They need a prospectus. And in Schooler, the court says, you know, when we make these determinations, this looks more like a security. It needed to be registered. What's that asset class looks like? More than 25,000. But you don't see the SEC trying to say, well, this individual general partnership agreement is fine, this one is not. It's sort of not how the agency works. As the district court found, there's no obligation to give that kind of private party's request for guidance. And that's just not how the agency works. Other agencies work differently. What do we make of this Hinman speech? So I think, you know, as counsel pointed out, or as the commission also, it's Mr. Hinman himself. It's not action by the commission. The speech expressly disclaims that it's commission action. And twice, first of all, there's a standard footnote. It is a script. It says, this speech expresses the author's views, does not necessarily reflect those of the commission. But even in the text of the speech itself, it says, Mr. Hinman says, based on my understanding of the present state of Ether, again, 2018, present state of the Ether and the network offers and sales of Ether and non-securities transactions. So, you know, it's not a product of an evaluative process by the commission itself. The commission can only act by majority of its commissioners in a vote. That's by statute. And there's no vote to delegate that power to individual division heads. And we have a lot of division heads. And I have a lot of bosses. And I think it would just be very difficult and practical if any single commissioner or director division could bind the agency. That would be a problem for us. But also be a problem for courts. Because how would you determine and review agency policy if anyone can make that policy? So this statutory requirement of acting through the majority of the commission sort of is what gives agency action, final agency action that's then very reviewable. But the Hinman speech is just not. What about the fair notice issue that counsel raised? That if there's this indefinite quality to is Ethereum a security or not, and people are lingering under this apprehension of what might happen, why isn't there some due process concern potentially with the SEC springing into action and bringing in action against someone? So, you know, we talked about how the district court said there's no statutory obligation to give that guidance. But in any event, there is sufficient guidance. I think it's notable. I mean, counsel said every court that looked at this question when it was actually litigated turned down the fair notice argument. I mean, that's pretty remarkable. And again, that's very factual. What did they know in that position? And if you look at the cases, like people are consulting attorneys, and they know what the test is, even if they don't know how it will come out. They're getting opinion letters, counsel letters. There's a scorecard system. And the court said, you know, you're sort of aware for it. Law firms give advice about crypto day in and day out. And that's sufficient, especially in this commercial context where industry participants can plan their behavior carefully. And I also just have to disagree that there's no sources of guidance. The commission itself issued the Dow report seven years ago in 2017. And it said, we're putting people on alert. You might be offering securities. We notice a very big thing is happening in this industry. And then there are subsequent enforcement actions, 90. But after the Dow report, courts look at the Dow report when analyzing notice. Three cases I'll highlight. Coinbase, Terraform, and Ripple. And they said, look, that was providing notice that if we operate in this space, you might be offering a security. And in addition to those crypto cases, you know, Howey was decided in 1946. Since then, it's been through a lot of technological changes. We have cases involving pay phones, cell phones, airplanes, the internet, aerospace, satellites. And it's a case-by-case determination, you know, for how you look at past cases involving Howey. And the courts say that can give notice. We also have the Dow report. Cases say that that gave specific notice. So, you know, again, and just turning back, it's impractical and improper for the commission to offer asset-by-asset determinations, which is sort of what kind of the notice that we're being asked for. Again, $25,000. And it's very hard to get up-down without, you know, some mechanism. But there is that, you know, no action process with its, you know, limits to get there. If you have no further questions, I'm... Thank you, counsel. Thank you. I think you had some time left, Mr. Rispoli. Thank you. I'm happy to address any issues the court has, but I think in my rebuttal time, I want to stress what was just discussed. And, you know, Judge Wardlow hit it on the head. It's depending on how Ethereum is used. The SEC says it could be used in a lot of different ways. So we don't know what's going to happen with this consensus case, and it doesn't impact how hot or warm... Do you work with issuers? No, not at all, Your Honor. And the situation about the statutory exemption is problematic because that presumes the issue that we're fighting, which is that Ethereum is a commodity and not a security. That statutory exemption says you're exempted from dealing with securities, which is what we fundamentally dispute. When Judge Wardlow asked about, well, can't you just get a no enforcement? The SEC said, no, you cannot because we'll only give you a no action letter. And what are the words that it used to describe that no action letter? The comfort that it gives, not legally binding in any way, shape, or form. And, you know, one example of that is Coinbase had gone through the SEC in its registration statement saying it uses Ethereum, and the SEC signed off on an IPO, for example, saying, go ahead, go out into the wild. And then the SEC comes back four to five years later, sues Coinbase for engaging in substantial federal securities violations. So a no action letter is no comfort at all. And you also heard counsel talk about, you know, these ephemeral issues of how to figure this out, a flow chart. Commodities are securities. There's a scorecard system. There's just no concrete ability for HODL law to know exactly what, if what it's doing is illegal or not. And again, I would just retreat to the fact that that is not, the investigation of HODL law is not the standard that this court should be looking at when it's coming to standing. And it's what is the realistic danger? And think about tomorrow if the SEC says utilizing Ethereum in the way that HODL law does is a federal securities violation. Not only does that dramatically destroy the price of the Ether token, it implicates the firm in federal securities violations, potential state bar issues, and all sorts of other things, a host of other issues. And, you know, again, in the standing inquiry, the court has to consider that, and the court has found standing in the past when no one's ever been prosecuted under the challenge provision. That's not a dispositive issue. And failure to disavow application of the law to the facts is another factor that is something to be considered in standing. And the SEC just refuses to disavow that Ethereum and the Ether token are securities in the way that the law firm uses it. You know, I would just go on to just briefly note that the Dow report mentioned two commissioners have issued a scathing dissent on the value and utility of that report. And again, with the personal opinion of Director Hinman, he also didn't disclose again that his speech went through approval and review of 18 different offices and divisions, the chair and the general counsel, before he gave it. Thank you. All right. Thank you very much, counsel. Thank you. HODL law versus the Securities Exchange Commission is submitted, and this session of the court is adjourned for today. All rise. This court for this session stands adjourned.
judges: WARDLAW, PAEZ, SANCHEZ